CARDWELL & DOWLING, LLP
Elaine A. Dowling, Esq.
9494 W. Flamingo, Ste. 101
Las Vegas, Nevada, 89147
(702) 304-8203
Fax: (702) 304-8204

Attorneys for Plaintiff,
Plasma Arc Technologies, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTHERN NEVADA

| | |
|---|---|
| PLASMA ARC TECHNOLOGIES, INC., ) <br> A Florida Corporation; ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JOHN VOORHES, an Individual, ) <br> GOLDEN EAGLE JB, LTD, a Nevada ) <br> Corporation, and OXYGROUP, INC., a ) <br> Nevada Corporation; ) <br> ) <br> Defendants. ) | CASE NO.: <br><br> DEPT. NO.: |

## COMPLAINT

**COMES NOW** Plaintiff, PLASMA ARC TECHNOLOGIES, INC., by and through its undersigned counsel, and files this Complaint against Defendants joint and severally, as to Defendant JOHN VOORHEES, an individual and resident of the State of Nevada, and as to Defendant, GOLDEN EAGLE JB, LTD, a Nevada Corporation, and as to Defendant, OXYGROUP, INC, a Nevada corporation, to which Plaintiff does hereby allege against Defendants, and each of them, in furtherance thereof states as follows:

## NATURE OF THE CASE

1.      This is a civil action brought forth under diversity jurisdiction against defendants for damages

as well as declaratory and injunctive relief for interference with contractual relations, interference with prospective business advantage, for the intentional and depreciative remarks and actions to Plaintiff's contracted third party equipment purchaser, precious metal feedstock partner and capital funding group; regarding the purchase, sale, processing and maintenance of a Plasma-based Metallurgic Recovery System; and such intentional and direct actions and efforts to interfere and derail Plaintiff's contractual relations with third parties such as to obfuscate the fulfillment of pre-existing contractual obligations to Plaintiff.

2.     Plaintiff, Plasma Arc Technologies, is in the business of providing advance thermal processing systems; including but not limited to, plasma-based elemental reclamation technology for use, among other purposes, in recovering precious and noble metals from complex ore concentrates.

3.     Defendants, John Voorhees, Golden Eagle JB, LTD, Oxygroup, Inc., represent a collective consortium of business interests under common ownership, management and control. These entities are engaged primarily in the collective attempt to develop highly specialized technological "know-how" to recover precious metals from complex ore concentrates they claim, through joint or severable title, to currently own by and under the leadership and control of Defendant Voorhees.

4.     That in an effort to acquire highly-specialized technical expertise that Defendants did not possess, as well as acquire necessary capital funding that Defendants did not possess to finance Defendants' recovery endeavor of its precious metal ore concentrate; Defendants have made, in whole and in part, false and defamatory statements about Plaintiff, Plasma Arc Technologies, to its (1) contracted metallurgic recovery system purchaser, (2) complex ore feedstock supplier, and (3) capital funding group; for the intentional and malicious purpose to obfuscate, derail, and terminate such pre-existing contractual relationships held by Plaintiff for Defendants' direct business advantage and economic benefit.

5.     That as a direct result and proximate cause of Defendants illicit and malicious actions and misconduct, Plaintiff has been substantially harmed, and continues to suffer injury.

## PARTIES

6.      Plaintiff, Plasma Arc Technologies, is and at all times relevant, been incorporated and registered with the Division of Corporations of Florida, and the Division of Corporations of Texas, and a Licensed Business Operator in Ontario, Canada; as well as licensed to do business and holding an office in Lake Wylie, North Carolina and Seoul, South Korea; as well as joint ventured and holding project offices in New York and West Virginia; as well as doing business with strategic alliance partners in California, Kentucky, Illinois, Saudi Arabia, and Columbia. It holds a United States administrative office at 201 S. Biscayne Blvd., 28th Floor, Miami, FL 33131.

7.      Defendant, John Voorhees, is an individual, and at all times relevant, held his primary residence Nevada; located in 2706 Briarcliff Avenue, Hendersonville, Nevada, 89074.

8.      Defendant, Golden Eagle JB, LTD is a company incorporated in the State of Nevada and holds its principal place of business at 1350 E. Flamingo Road, Ste 3326, Las Vegas, Nevada, 89119, and has its registered agent listed as Cheryl Curtis, at 6261 Huntington Ridge Ave, Las Vegas, NV, 89139.

9.      Defendant, Oxygroup, Inc., is a company incorporated in the State of Nevada, and holds its principal place of business at 1350 E. Flamingo Road, Ste 3326, Las Vegas, Nevada, 89119, and has its registered agent listed as Quality Stock Transfer, Inc, 318 South Maryland Parkway, #105, Las Vegas, Nevada, 89101.

10.     That the party Defendants are referred to at times herein individually and so designated as such, and also collectively as "Defendants" to include the joint or severable conduct of one or all of the Defendants as such allegations may be so deemed applicative to conduct as alleged against Defendants hereto in general, and that shall be more specifically alleged herefrom as shall be further identified upon discovery proceedings.

3

## JURISDICTION AND VENUE

11.     That jurisdiction is appropriate in this case under 28 U.S.C. § 1332 (a)(1) conferring statutory diversity jurisdiction in federal court as herein requires that the parties be citizen of different states.

12.     That at all times relevant to this action, Plaintiff is a Florida based corporation with its principal place of business in Florida and duly registered with the State of Florida, Secretary of State, Division of Corporations.

13.     That at all times relevant to this action, Defendant, John Voorhees, is a Nevada resident, owning a home and holding his primary state citizenship in the State of Nevada.

14.     That at all times relevant to this action, Defendant, Oxygroup, Inc, is a Nevada corporation with its principal place of business and registered agent in Nevada.

15.     That at all times relevant to this action, Defendant, Golden Eagle JB, LTD, is a Nevada corporation with its principal place of business and registered agent in Nevada.

16.     That the amount in controversy in this action exceeds $17,250,600.00, USD exclusive of interest and costs, and is between citizens of different states. Thus, this Honorable Court through its statutory authority as herein described has diversity jurisdiction over this action under 28 U.S.C. §1332, and/or actual controversy jurisdiction under 28 U.S.C. §2201 and §2202.

17.     That venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) and (2) because Defendants reside and/or maintain its principal place of business in the District and conduct business activities pursuant to the cause of action giving rise to this Complaint.

4

# GENERAL ALLEGATIONS

18.     That on October 14, 2009, Plasma Arc Technologies (also referred to herein as "Plasma Arc") entered into an Equipment Purchase and Sales Contract (See Exhibit 1) with Galvin Metals, Inc. (also referred to herein as "Galvin Metals") whereby Galvin Metals was to purchase from Plasma Arc Technologies two plasma-based metallurgic recovery unit for the purchase price of $17,250,600.00 USD, and 13,131,000.00 USD, for a total contract price of thirty million dollars ($30,381,600.00 USD).

19.     That the purpose of this plasma-based metallurgic recovery system is to process various complex mineral rich ores using the Plaintiff's proprietary plasmafication technology to recover such precious and noble metals groups.  Moreover, the application of Plaintiff's plasmafication process and system as to the elemental recovery of gold, silver and platinum group metals (PGMs) would generate very lucrative returns for Plaintiff based on the results of preliminary testing and verified assays conducted and relied upon by Plaintiff.

20.     That Defendant, Voorhees, as an associate of Richard Galvin (e.g. President of Galvin Metals, Inc.) had certain and definite knowledge of the existence of the contract between Plasma Arc and Galvin Metals regarding the use of plasma technology to reclaim the AU, AG and PGM's from complex ore concentrates.

21.     That Defendant, Voorhees, as a business associate of Richard Galvin had certain and definite knowledge that Plasma Arc was selling to Galvin Metals a plasma system/equipment pursuant to a written contract that stated, in part, that Plasma Arc would deliver to Galvin Metals a retrofitted and upgraded plasma-based metallurgic recovery system.

22.     That the delivery of such a specially retrofitted and upgraded plasma arc system constituted a material element to the contract between  Plasma Arc and Galvin Metals,

23.     That the Defendant, Voorhees, has publicly claimed and made attestations to being "in the field of mineral research and the recovery, extraction and refining of precious metals ..." for over 30 years, and actually contributed in performing some of the assays on the mineral rich ores contemplated within this pleading and relied upon by the Plaintiff therefrom.

24.     That the attestations provided by Defendant Voorhees as purported in his mineral analysis constituted material representations to the entering of the contract by and between Plasma Arc and Galvin Metals.

25.     That on December 15, 2009, Plasma Arc Technologies and Galvin Metals entered into an Assignment of Contract whereby the rights to purchase the plasma-based metallurgic recovery system was assigned to Metals, Milling & Mining, LLC, (also referred to herein as "MM&M") a company duly licensed and authorized under the laws of the State of Delaware (See Exhibit 2).

26.     That the December 15, 2009 Assignment of Contract was for the purchase and sale of two plasma-based metallurgic recovery systems valued at a total contract price of thirty million dollars ($30,381,600.00 USD).

27.     That, Metals, Milling & Mining, LLC consists of the principles of Galvin Metals in addition to its funding partners Capital Partners.  The purpose of the MM&M, LLC was to represent the funding group's interest in the financial return of the metal recovery from Plasma Arc Technologies' plasmafication process; including in specific, the sale of the Plasma Arc equipment to MM&M pursuant to the assignment of rights and obligations from Galvin Metals to which Defendant Voorhees had certain and definite knowledge.

28.     That contract performance was based on a Draw Schedule upon which HFP Capital, on behalf of Metals, Milling & Mining would issue *Draw Amounts* upon commencement of engineering, and continue making payments through the engineering process as well as through fabrication, delivery, installation, and initiation of processing, as well as subsequent long-term service and maintenance contract.

29.     That Plasma Arc Technologies entered into further written agreements to remain active in the plasma-based processing of the precious metal ore concentrate and stay on to service, maintain, and operate the facility on a perpetual basis.

30.     That Plasma Arc Technologies entered into additional oral agreements with MM&M with respect to proprietary technology regarding the elemental recovery of precious and noble metals from complex ore concentrates.

31.     That Plasma Arc Technologies entered into further oral agreements with HFP Capital with respect to advancing proprietary technology regarding the elemental recovery of precious and noble metals from complex ore concentrates.

32.     That HFP Capital, on behalf of Metals, Milling & Mining, started issuing draw amounts in accordance with the Contractual Agreement and an accompanying Draw Schedule that was first received the end of December 2009 and continued monthly through the engineering phase, and to continue thereafter through the equipment, fabrication and purchase phase that; included specifically the Plasma Arc system to which Defendants have intentionally and tortiously interfered.

33.     That all conditions precedent pursuant to contractual relationship between Plasma Arc Technologies and Metals, Milling & Mining were satisfied and complied with by Plaintiff, Plasma Arc Technologies, at all times prior to and upon the milestone date of April 1, 2010.

34.     That on April 1, 2010, all engineering requirements for the fabrication and installation of the plasma-based metallurgic recovery system were finished as per the terms and covenants of the contractual relationship between Plasma Arc Technologies and Metals, Milling & Mining.

35.     That as of April 1, 2010, Plaintiff, Plasma Arc Technologies, was in full compliance of all contractual duties, obligations and set forth deliverables pursuant to the agreement between Plasma Arc Technologies and Metals, Milling & Mining.

36.     That the contractual agreement between Plasma Arc Technologies and Metals, Milling & Mining called for a consecutive, subsequent payment schedule for the commencement of fabrication by Plasma Arc Technologies regarding the metallurgic recovery system as per the accompanying Draw Schedule, and was set for April 19, 2010 (See Exhibit 3).

37.     That on or about April 9, 2010, the Defendants, by and through Defendant, John Voorhees, began contacting Plasma Arc Technologies' scientist, executives and/or Board of Directors to assist Defendant Voorhees in an, at the time unbeknownst, illicit scheme predicated upon repairing "his plasma equipment" in an effort to get it operational for the sole purpose of processing ore for the benefit of himself and his associated companies.

38.     That, in fact, not one of the Defendants owned the equipment they were requesting to have repaired; moreover, not one of the Defendant's had any written authority to issue a repair order for the equipment Defendants wanted Plasma Arc to work on.

39.     That under Defendant's fabricated pretext of an immediate emergency and extreme urgency, members of Plasma Arc Technologies' science team started to be pressured and lured by Defendant Voorhees to visit a warehouse in Montana that the Defendant and/or Defendants purported to "own" a plasma system in "need of repair." In fact, neither Defendant Voorhees, nor any of the Defendants, owned the equipment that Defendants were attempting to lure Plaintiffs to conduct repairs upon.

40.     That in further support of the fact that there was never an emergency and that Defendants were never truly serious about having "their" plasma system repaired, Defendants never provided Plasma Arc a Model Number, System Make, System Schematics, Cut Sheets, General Assembly Drawings, Trouble Shoot Test Results, Operational Diagnosis, or any written statement about the

system or its disrepair, only that it was a dire emergency and that Plasma Arc had to act fast to help the situation.

41.     That Defendants knowingly and intentionally exploited good faith covenants and Plasma Arc's professional relationship within its industry to generally be of assistance to each other in the case of an emergency situation; in light of the fact of the potential environmental and human safety hazardous that exist if a plasma system is in a critical or emergency state of disrepair.

42.     That, in fact, there was no state of emergency and that Defendants created a sense of emergency to lure Plaintiff's scientist and key personnel to Defendants for the purpose of circumventing Plaintiff's business protocol and standard business practice that would have been employed when engaging a non-emergency situation in the marketplace, and gain access to Plaintiff's elite scientific team in an effort to acquire confidential information, lure key personnel, transition itself into Plaintiff's capital funding, and disrupt, if not destroy, Plaintiff's contractual agreement.

43.     Moreover, Defendants created a false sense of urgency and state of emergency at the Montana warehouse facility as part of, and in furtherance thereof, luring Plasma Arc's key personnel into interacting with Defendants' under the false pretext, and for the primary purpose to further Defendant's scheme to interfere with the contractual relationship by and between Plasma Arc and MM&M; by (1) acting in manner to entice Plasma Arc key team members assigned to the Plasma Arc/MM&M Project to act contrary to Plasma Arc's contractual obligations to MM&M, (2) simultaneously steal Plasma Arc talent and skill sets for the direct and known purpose to assist Defendants with its business agenda; along with the direct, intentional and malicious purpose of derailing and causing breach of Plasma Arc's contractual obligations to Galvin Metals and its assignee, MM&M, its precious metal feedstock supplier, and capital funding source that was financing the purchase and sale of the equipment pursuant to the ongoing contract.

44.     That, in fact, Defendants plasma system was not in a state of emergency or disrepair at all and only required basic calibrating to become operational, all of which was well within the skill-set

9

of Defendant, Voorhees, or other Defendants having had thirty plus years in the field. Nonetheless, Defendants claims of emergency need of repair was nothing more than an enticement to get Plasma Arc Technologies' scientist team to meet with Defendant, John Voorhees, so he could execute his scheme to (1) illicitly acquire proprietary company secrets from Plaintiff, (2) tortiously acquire the names and details about confidential suppliers, and (3) tortiously acquire key Plasma Arc Technologies executives and/or scientist in an intentional and knowing effort to obfuscate and derail the pre-existing contractual relation between Plasma Arc Technologies and its contracted system purchaser, complex ore supplier, and capital funding group; as well as simultaneously advance Defendants into the market position that Plasma Arc presently enjoyed under its contractual agreements and relationships.

45.     That the Defendants attempted to, and did in fact use this pretext to wrongfully initiate contact with Plasma Arc Technologies' personnel, as well as tortiously insert Defendants into a position to contact Plasma Arc Technologies funding group in a direct and knowing attempt to usher away capital from Plaintiff at the expense of Plasma Arc Technologies' fully signed and executed contractual agreement and funnel that capital to Defendants instead.

46.     That in furtherance of Defendants' tortious scheme under the pretexts described herein and other misconduct as so set forth, Defendants' conferred a long line of false and defamatory statements to Plaintiff's funding group as well as Plaintiff's personnel that was clearly designed to at the very least "interfere;" and inasmuch "destroy" the contractual relationship Plasma Arc Technologies had with its precious metal ore supplier and its funding group, as well as generate dissention within and among its own engineers, physicists and executives that were subject to Defendant Voorhees false and defamatory statements on behalf of Defendants collectively.

47.     That Defendants, and in specific Defendant Voorhees, in an effort to further his illicit scheme, initiated telephone communications to Plasma Arc Technologies' executives in which Defendant Voorhees is quoted as saying, "I put Plasma Arc in the metal business. They were never doing metal until I spoke with them. That they have no knowledge about this field and that they {Plasma Arc Technologies} could never figure out how to recover precious metal from this ore"

That these statements are complete and utter falsehoods and factually without merit in that Plasma Arc Technologies and its affiliates have been operating plasma systems and recovering metals as such dating back over a decade. (Please see Exhibit 4 – Past Project History).

48.     That Plaintiff is informed and believes, and on that basis alleges that Defendants, and in specific Defendant Voorhees, initiated phone conversations with Plasma Arc Technologies funding source asserting that Plasma Arc Technologies is not qualified to process the ore and lacks the fundamental knowledge and know-how to fulfill its contractual obligations, and that the funding source would be better off ending the relationship {*id est, breaching the contractual relationship*} with Plasma Arc Technologies and singularly pursuing a funding relationship with Defendant Voorhees and Defendant companies, Oxygroup, Inc, and Golden Eagle JB, LTD {emphasis added}.

49.     That Defendant Voorhees continued to make numerous phone calls and electronic communications to Plasma Arc Technologies physicists and science team enticing them to meet with Defendant for purposes that further Defendants scheme to obfuscate, circumvent and intentionally cause Plaintiff to be unable to fulfill its contractual obligations with its funding group, precious metal feedstock supplier and contracted equipment buyer.

50.     That the Defendants assiduous and surreptitious communications with Plasma Arc's science team clearly divulged Defendants-Interferer's purpose of tortiously advancing the business interests of Defendants to the exclusion, detriment and disruption of the contracts and business relations between Plasma Arc Technologies and its duly executed contractual partners.

51.     That among Defendants' wrongful acts was to independently lure some of the Plasma Arc Technologies' top personnel to perform clandestine metal recovery services for Defendants.

52.     That among Defendants' wrongful acts was to intentionally make false, misleading statements to Plasma Arc's key personnel about Defendants self-conducted, self proclaimed and bloviated metallurgic assays with the direct and knowing intention to dissolve the cohesiveness of Plaintiff's science team assigned to perform the contractual obligations of Plaintiff.

11

1

2
53.     That among Defendants' wrongful acts was to act in a manner that disrupted the draw
3
schedule and contractual relationship between Plasma Arc Technologies and its funding group that
4
was to be issued to Plasma Arc Technologies under the contract *(See Exhibit1)* which would have
5
the known and desired effect of Defendants causing a breach of Plaintiff's agreement to deliver the
6
metallurgic ore processing system.

7

8
54.     That among the false and misleading statements made by Defendants, Plaintiff is informed
9
and believes, and thereupon alleges that such defamatory statements include but are not limited to
10
statements to Plasma Arc Technologies' (1) contracted system purchaser per its Purchase and Sale
11
Contract, (2) contracted precious metal feedstock supplier per its ore processing agreement, and (3)
12
key personnel in Plasma Arc Technologies executive and scientific team that Plasma Arc was not
13
qualified and/or capable to fulfill its contractual obligations and that Defendants would be a better
choice to pursue business with.

14

15
55.     That among the false and misleading statements made by Defendants, Plaintiff is informed
16
and believes, and thereupon alleges that Defendants made defamatory statements; that include but
17
are not limited to statements that Plasma Arc Technologies was "ripping the you {funding group}
18
off" thereby asserting in the most favorable interpretation of the assertion by Defendants, an
19
insinuation of impropriety and breach of good faith covenants, and in the least favorable
20
interpretation of the comment the accusation of criminal activity on the part of Plaintiff in its dealing
with its feedstock supplier and funding group.

21

22
56.     That among the false and misleading comments made by Defendants, Plaintiff is informed
23
and believes, and thereupon alleges that such defamatory statements include but are not limited to
24
statements that the team at Plasma Arc Technologies are "thieves and that I *{i.e. Voorhees}* can do
25
the project cheaper and that *{i.e. the funding source}* does not need Plasma Arc and to do the project
26
with me *{i.e. Voorhees}*. (*"id est"* added).

27

28

57.     That among the false and misleading statements made by Defendants, Plaintiff is informed and believes, and thereupon alleges that such defamatory statements include but are not limited to statements by Defendant Voorhees that Plasma Arc Technologies' plasma scientists would be willing to partner with Defendant Voorhees and/or Defendant companies to assist Defendants in recovering precious metal from ore concentrates to the exclusion and detriment of Plaintiff and in clear and definite breach of the contract held by Plasma Arc Technologies and known to Defendants.

58.     That among the false and misleading statements made by Defendants, Plaintiff is informed and believes, and thereupon alleges that such defamatory statements include but are not limited to statements by Defendant Voorhees that Plasma Arc Technologies' plasma scientists would assist Defendant Voorhees in circumventing and derailing a pre-existing agreement that Plaintiff has in place to supply a commercial scale plasma system to a contracted buyer, Galvin Metals, and further assist in the operation, maintenance and service of such machine.

59.     That among the false and misleading comments made by Defendants, Plaintiff is informed and believes, and thereupon alleges that such defamatory statements include but are not limited to statements by Defendant Voorhees that Plasma Arc Technologies' Chief Plasma Physicist was in Montana with Defendant Voorhees assisting Defendant in repairing his plasma machine, and that Plasma Arc Technologies' Chief Plasma Physicist would be willing to work for and/or with Defendant Voorhees on pursuing Defendants' desire to pursue independent business opportunities regarding the precious metal ore the Defendant claims to own; when in fact Plasma Arc Technologies' Chief Plasma Physicist never met Defendant Voorhees, nor did he ever make any indication or affirmation that he would leave Plasma Arc Technologies' team and/or the contracted projects that Plasma Arc was currently undertaking to go into business with Defendants and process Defendants' supposed precious metal ore feedstock. .

60.     That among the false and misleading statements made by Defendants, Plaintiff is informed and believes, and thereupon alleges that such defamatory statements include but are not limited to statements by Defendant Voorhees directly to Plaintiff's funding group for the project that created

a sense of "instability and dissonance" in the commitment and technical ability of Plasma Arc Technologies to deliver the agreed plasma-based metallurgic recovery systems as contracted.

61.     That among the false and misleading statements made by Defendants, Plaintiff is informed and believes, and thereupon alleges that such defamatory statements include but are not limited to statements to Plaintiff's funding group that created the impression of a lack of leadership and control; such as the "jumping of ship" of Plasma Arc's key plasma physicists.

62.     That among the false and misleading comments made by Defendants, Plaintiff is informed and believes, and thereupon alleges that such defamatory statements include but are not limited to statements by Defendant Voorhees directly to Plaintiff's funding group for the contracted project that created alarm and concern regarding "team cohesiveness" and Plaintiff's ability to deliver the project on time and on budget and with the contract level of expertise, sophistication and cutting-edge technological innovation.

63.     That among the false and misleading comments made by Defendants, Plaintiff is informed and believes, and thereupon alleges that such defamatory statements include but are not limited to statements by Defendant Voorhees that misled Plasma Arc Technologies funding group that their current project investment and future contractual contributions were at extreme risk and that such capital funding source should not move forward with Plaintiff based on these intentionally inaccurate and false facts told to Plasma Arc Technologies funding source.

64.     That such inaccurate and false statements were made and communicated to Plaintiff's contracted client, feedstock partner, and capital funding source via a variety of methods and modes that Plaintiff is informed and believes, and thereupon alleges were made via in-person communications, multimedia communications, telephonic communications, text messaging, and/or email by and among Defendants to disrupt and derail Plaintiff's contracted system purchaser, feedstock partner and capital funding source from fulfilling its contracted obligations.

14

65.    That based upon Defendants' malicious intent, methods and modes, as well as Defendants' numerous intentional communications of false and derogatory statements and acts of contractual interference; Metals, Milling & Mining has not issued its next scheduled draw amount to commence fabrication of the contracted plasma system.

66.    That Defendants' false and tortious communications to Plasma Arc Technologies' contracted equipment purchaser and key personnel which purported numerous and various falsehoods and disparaging statements in order to "distance" investment, derail a pre-existing contractual relationship, and destroy that relationship that Defendants were fully aware of, for their sole and exclusive gain and greed, was a direct and intentional action aimed at obfuscating and cancelling the ongoing and valued contractual relationship by and among Plasma Arc Technologies and its contracted parties to the project.

## FIRST CLAIM FOR RELIEF

### (Tortious Interference with Contractual Relations)

67.    Plaintiff hereby realleges and incorporate by reference each and every allegation set forth at paragraphs 1 through 66, above, as though fully set forth herein.

68.    That to prevail in an action for Tortious Interference of Contractual Relations, one must show:

        i.      The existence of contract to which plaintiff is a party;

        ii.     Defendant's knowledge of the contract;

        iii.    Defendant's intentional procurement of the contract's breach;

        iv.    The absence of justification or privilege; and

        v.     Plaintiff suffered damages resulting from the breach.

*Ace Pro Sound & Recording, LLC v. Albertson*, 512 F. Supp. 2d 1259, 1268 (S.D. Fla. 2007); *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1367 (M.D. Fla. 2007); *Williams Elec. Co. v. Honeywell, Inc.*, 772 F. Supp. 1225, 1235 (N.D. Fla. 1991); *Restatement (Second) of Torts* § 766 (1979).

69.     That tortious interference with a contract is virtually identical to the elements of a claim for tortious interference with business relationships; however, it is recognized as a separate cause of action. *See McDonald v. McGowan,* 402 So. 2d 1197, 1201 (Fla. 5th DCA 1981).

70.     That Plaintiff operates a business making, among other thermal processing equipment, Plasma-based Elemental Recycling Units that can be adapted to serve multiple processing functions including; metal recovery, hydrocarbons-to-electricity systems, hydrocarbons-to-liquid fuels systems, hybrid solar energy arrays, heat recovery systems, among other processes.  Plasma Arc and its principles have been in this business nearly fifteen years.

71.     That Plasma Arc entered into a contract with Galvin Metals and subsequently its assignee, MM&M, that was fully executed and the parties had begun performance.

72.     That the existence of the contract, exhibited in Exhibit 1, shows prima facie evidence of a contractual relationship between the parties.

73.     Defendants' false statements constitute tortious interference with an existing contract held by Plaintiff.

74.     That Defendants, as earlier noted herein, clearly knew about the contract and relationship between Plasma Arc and Galvin Metals and its assignee, MM&M, since Defendant Voorhees helped in procuring the metallurgic assays on the ore concentrates.

75.     That Defendants, through his illicit scheme, cloaked under the pretext of repair to a machine he did not own nor had authority to fix, attempted to lure Plasma Arc personnel to his camp and scare the contracted purchaser and funding group and feedstock partner from following through with their contractual obligations.

76.     That the Defendants' acts were designed to disinterest Plasma Arc's funding group from going forward with the contracted project and "steal" some of its top scientific personnel for Defendants' sole and exclusive economic and business interests for which Defendants have no justification, privilege, nor excuse.

77.     That Plasma Arc's business is highly specialized and having high economic barriers to entry and requiring large financial commitments, and that Plasma Arc's personnel as referenced in this pleading are actually some of, if not, the top plasma physicists and engineers recognized around the world.

78.     That Defendant did such acts with a conscious desire to prevent, derail, and/or terminate an actual, valid contractual relationship that the Defendant had full knowledge of.

79.     That Defendants intentional interference induced and caused a breach of the contractual relationship and the expectancy of that relationship.

80.     That the complex science and molecular biophysics involved, coupled with the fact that this funding/feedstock partner had several hundred million dollars worth of complex mineral ore, makes the Plasma Arc contract described herein an irreplaceable contract.

81.     That Plaintiff has been damaged as a result of Defendants intentional interference.

82.     As a direct and proximate result of the conduct of Defendants as alleged hereinabove, Plaintiff has suffered general and special pecuniary and non-pecuniary damages in an amount to be proven by contract and at trial, but not less than $17,250,600.00 USD.

83.     Defendants' actions were undertaken willfully, wantonly, maliciously and in reckless disregard for Plaintiff's rights, and as a direct and proximate result thereof Plaintiff suffered economic and in this case (involving this type of complex science and specialized molecular

biophysics) unquestionably irreparable damage in a total amount to be proven at trial, therefore Plaintiff seeks exemplary and punitive damages in an amount sufficient to deter said Defendant and others from similar future wrongful conduct.

## SECOND CLAIM FOR RELIEF
### (Tortious Interference with Business Relationship)

84.     Plaintiff hereby realleges and incorporates by reference each and every allegation set forth at paragraphs 1 through 83, above, as though fully set forth herein.

85.     That to prevail in an action for Tortious Interference with Business Relationship, one must show
- Plaintiff has a business relationship, not necessarily evidenced by an enforceable contract;
- Defendant has knowledge of the relationship;
- Defendant intentionally and unjustifiably interfered with the relationship; and
- Plaintiff suffered damages;

*Boldstar Tech., LLC v. Home Depot, Inc.,* 517 F. Supp. 2d 1283, 1288 (S.D. Fla. 2007); *Citadel Commerce Corp. v. Cook Systems*, LLC, No. 8:08-cv-1923-T-33TGW, 2009 WL 1230067, *4 (M.D. Fla. May 5, 2009); *Restatement (Second) of Torts* § 767, (1995 Amendment).

86.     Plaintiff had a legitimate, identifiable, and undeniable business relationship not only with its duly executed system purchaser but also its capital funder and precious metal feedstock supplier.

87.     That these relationships are especially advantageous considering is difficult in today's market place to find a funding group who also has nearly an unlimited feedstock supply and the funding required to design, build, fabricate, operate, and maintain and facility like this.

88.     That the relationship Plasma Arc has with its engineers and plasma physicists is especially integral to the success of the company because of the highly specialized field of molecular biophysics and quantum mechanics. Plaintiff's plasma physicists are widely regarded as some of the world's forefront leaders in "plasma and elemental physicists."

18

89.     That the interference complained herein is infinitely exacerbated by the level of relationships procured by Plasma Arc through its business and contractual relationships that have been interfered with by Defendant.

90.     That Defendants did such acts with a conscious desire to prevent Plaintiff's contractual relationship from matriculating and knew the interference was certain or substantially certain to derail or disrupt the contractual relationship between Plaintiff and target of Defendant-Interferer as a result of the conduct.

91.     Defendants were aware of Plaintiff's prospective business advantage and by engaging in the unjustified conduct described more fully hereinabove, Defendants intentionally, negligently, and improperly interfered with Plaintiff's prospective economic advantage in the Plasma marketplace.

92.     That Defendant Voorhees is a metallurgist familiar with Plasma Technology's utility in the field of metal recovery, and he surely knows Plasma's engineers are some of the top in the world as it is a small pond and Plasma's Personnel are the "big fish."  If not, he wouldn't have asked for their help in the repairs to facility as a pretext to his elicit scheme.

93.     That the Defendants knew, as evidenced by their own statements during phone calls, of the funding group Plasma Arc was contracting, and subsequently contracted with,  to accomplish its project goals.

94.     That Defendant Voorhees, through his elicit scheme (correspondence and phone calls) cloaked under the pretext of repair to a machine he did not own nor had authority to fix, attempted to lure Plasma Personnel and scare the contracted purchaser funding group/feedstock partner.

95.     That the Defendants were clearly attempting to circumvent Plasma Arc's funding group and its top personnel for Defendant's sole and exclusive economic and business interests for whom Defendants had no justification, privilege, nor excuse.

96.     That the sophisticated science and molecular biophysics involved coupled with the fact that the contract feedstock partner had several hundred million dollars worth of complex precious metal ore, makes this contract and its business advantage irreplaceable.

97.     As a direct and proximate result of the conduct of Defendants as alleged hereinabove, Plaintiff has suffered general and special pecuniary and non-pecuniary damages in an amount to be proven by contract and at trial, but not less than $17,250,600.00 USD.

98.     That the Plaintiff suffered actual harm and damages as a result of Defendants' conduct.

99.     That Defendants' actions were undertaken willfully, wantonly, maliciously and in reckless disregard for Plaintiff's rights, and as a direct and proximate result thereof Plaintiff suffered economic and in this case (involving this type of complex science and specialized molecular biophysics) unquestionably irreparable damage in a total amount to be proven at trial, and therefore Plaintiff seeks exemplary and punitive damages in an amount sufficient to deter said Defendant and others from similar future wrongful conduct.

## THIRD CLAIM FOR RELIEF
### (Defamation)

100.    Plaintiff hereby realleges and incorporates by reference each and every allegation set forth at paragraphs 1 through 99, above, as though fully set forth herein.

101.    Defendants false statements pertained to Plaintiff's, harmed Plaintiff's reputation amongst its contract partners, and deterred third parties from associating and dealing with Plaintiff and furthering its contractual relationship.

102.    Defendants had no privilege to make such defamatory statements.

103.    Defendants, and in specific Defendant Voorhees' statements are classified as defamation per se by falsely accusing Plaintiff of criminal acts in the structuring of its contractual relationship with Galvin Metals.

104.    Defendants, and in specific Defendant Voorhees' statements are classified as defamation per se as oral and written statements to Plasma personnel and contracted partners which injured Plaintiff in its trade and profession, and attributed false conduct, characteristics, or conditions incompatible with the proper exercise of Plaintiff's lawful trade and business.

105.    That In slander per se actions, the defamatory statement is actionable on its face and damages are presumed. Axelrod v. Califano, 357 So. 2d 1048, 1050 (Fla. 1st DCA 1978); Bass v. Rivera, 826 So.2d 534, 534 (Fla. 2nd DCA 2002); Miami Herald Publ'g Co. v. Ane, 423 So. 2d 376, 390 (Fla. 3d DCA 1982), aff'd, 458 So. 2d 239 (Fla. 1984).

106.    That the nature of the false statements is such that malice and actual damage is presumed.

107.    That Defendants' knew the statements made to Plaintiff's business associates, partners, contractual parties false and made with an intentional disregard of the falsity and with intentional and actual malice.

108.    That there s no legal privilege or justification for Defendants intentionally purporting such knowingly false statements to Plaintiff's business associates, personnel, partners, and contractual parties.

109.    That Defendants' false and malicious statements were intended to cause monetary loss and Defendant should have recognized and known that his statements would result in monetary and contractual loss to Plaintiff.

110.    As a result of Defendants' false statements, Plaintiff has suffered through monetary damages alone for the irreparable harm and damage caused by Defendants' false statements.

111.    Plaintiff cannot be fully or adequately compensated solely through monetary damages alone for the irreparable harm and damage caused by Defendants' false statements.

### FOURTH CLAIM FOR RELIEF
### (Injunctive and Declaratory Relief)

112.    Plaintiff hereby alleges and incorporates by reference each and every allegation set forth at paragraphs 1 through 111, above, as though fully set forth herein.

113.    As a direct and proximate result of the foregoing conduct by Defendants, Plaintiff has sustained and will continue to sustain irreparable damage to his business and has no adequate remedy at law[1] to prevent repeated unfounded interference with his business relationships by Defendants, and is therefore entitled to an injunction enjoining Defendants and its officers, agents, directors, employees, licensees and all other persons acting by, through, or in concert with Defendants, from engaging in further acts interfering with his existing business, Plasma Arc Technologies, its funding group, and its plasma engineers and physicists.

114.    Furthermore, an actual, present, and substantial controversy exists between the parties, and a declaration as to the respective rights and duties of the parties, pursuant to 28 U.S.C. §§ 2201 and 2202, is necessary and appropriate.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff requests the following relief against Defendants, and each of them, as follows:

---

[1] Although a portion of this cause of action is for damages, Plasma Arc has other contracts with this funding group, and additionally has several contracts throughout the world.  This is why injunctive relief is also appropriate as Plasma Arc's business can be irreparably harmed in perpetuity if the interference with its funders and physicists continues.

22

1       For an award of general, special, consequential and/or continuing damages from the

2   defendants, and each of them, plus prejudgment interest thereon, according to proof or by operation

3   of law not less than $17,250,600.00;

4       For an award of exemplary and punitive damages to the extent allowed by law and in an

5   amount according to proof;

6       For preliminary and permanent injunctive and declaratory relief;

7       For attorneys' fees and costs of suit herein pursuant to statute or as otherwise may be allowed

8   by law; and,

9       For such other relief as this Court may deem just and proper.

10      DATED this ___7___ day of July, 2010.

11

12          **CARDWELL & DOWLING, LLP**

13

14

15          Elaine A. Dowling, Esq.

16          9494 W.  Flamingo Ste. 101, Ste. 101

17          Las Vegas, Nevada, 89147

18          (702) 304-8203

19

20          Attorneys for Plaintiff,
            Plasma Arc Technologies, Inc.

21

22

23

24

25

26

27

28